IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ACADIA INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 3:16-cv-00094 |
| v. | ) | |
| | ) | |
| TRI-STATE WATER TREATMENT, INC., | ) | |
| MICHAEL BAUER, and STACEY BAUER, | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

Now comes Plaintiff, Acadia Insurance Company, by and through its attorney, Kent J. Cummings of Hinshaw & Culbertson LLP, and for its Amended Complaint for Declaratory Judgment against Defendants, Tri-State Water Treatment, Inc., Michael Bauer, and Stacey Bauer (collectively, the "Defendants"), it states as follows:

## THE PARTIES

1.     Acadia Insurance Company ("Acadia") is, and at all relevant times has been, a corporation organized under the laws of New Hampshire with its principal place of business in Westbrook, Maine. At all times relevant hereto, Acadia was an insurer whose policies may be sold in Missouri.

2.     At all times relevant hereto, Tri-State Water Treatment, Inc. ("Tri-State") was a corporation organized under the laws of Missouri with its principal place of business located in Cape Girardeau, Missouri.

3.     At all times relevant hereto, Michael Bauer ("Michael") was a citizen of Madison County, Illinois.  Michael has since moved to St. Clair County, Illinois.

4.     At all times relevant hereto, Stacey Bauer ("Stacey) was a citizen of Madison County, Illinois.  Stacey has since moved to St. Clair County, Illinois.

131266946v3 3125

## JURISDICTION

5.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a)(1) in that the citizenship of the parties is completely diverse and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.  Specifically, the case relates to insurance policies providing well over $75,000 in coverage.   Additionally, defense of the counter-defendant in the underlying class action counterclaim would result in attorney's fees well in excess of $75,000.

## VENUE

6.    Venue is proper pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to this litigation occurred in this judicial district.

## THE UNDERLYING LAWSUIT

7.    On or about June 5, 2015, Michael and Stacey filed a Class Action Counterclaim against Tri-State in the Circuit Court for the Third Judicial Circuit, Madison County, Illinois, in case number 15-SC-1407 ("*Bauer* Counterclaim").   (A copy of the *Bauer* Counterclaim is attached hereto as **Exhibit A** and incorporated herein by reference.)

8.    On or about February 26, 2016, Michael and Stacey filed a First Amended Class Action Counterclaim against Tri-State, Home Depot U.S.A., Inc. ("Home Depot"), and Aquion, Inc., d/b/a Rainsoft ("Rainsoft").  ("*Bauer* Amended Counterclaim").  (A copy of the *Bauer* Amended Counterclaim is attached hereto as **Exhibit B** and incorporated herein by reference.)

9.    The allegations underpinning the *Bauer* Amended Counterclaim are substantively identical to the allegations of the original *Bauer* Counterclaim, except for the addition of Home Depot and Rainsoft as defendants and an additional civil conspiracy count against Tri-State. Unless otherwise noted, the ensuing discussion of the *Bauer* Amended Counterclaim will be correspondingly applicable to the original *Bauer* Counterclaim.

131266946v3 3125

10.    On or about April 14, 2016, the *Bauer* Amended Counterclaim was removed to the United States District Court for the Southern District of Illinois, where it is now pending as Case No. 3:16-cv-00419.

11.    According to the *Bauer* Amended Counterclaim, Tri-State promotes, markets, and sells, among other things, water treatment products.  (Ex. B, ¶ 9; Ex. A, ¶ 7.)

12.    The *Bauer* Amended Counterclaim alleges that these water treatment products are nothing more than water softeners coupled with reverse osmosis purification devices for household consumer use.  (Ex. B, ¶ 9; Ex. A, ¶ 7.)

13.    Tri-State allegedly sells its water treatment products through in-home appointments in which a Tri-State salesman will conduct a free "water evaluation," consisting of several purported "scientific tests" designed to highlight the differences between tap water and water treated by Tri-State's products.  (Ex. B, ¶ 9; Ex. A, ¶ 7.)

14.    The *Bauer* Amended Counterclaim alleges that the chemicals used in these purported scientific tests do nothing more than highlight the presence of minerals, which are present in the tap water of virtually every municipality.  (Ex. B, ¶ 9; Ex. A, ¶ 7.)

15.    Tri-State's demonstrations allegedly last over an hour and are followed by a sales pitch in which the salesman attempts to sell a water treatment system for more than $5,000.  (Ex. B, ¶ 9; Ex. A, ¶ 7.)

16.    The *Bauer* Amended Counterclaim alleges that the actual value of water softeners similar to those sold by Tri-State is approximately $347, with some available for as little as $98. (Ex. B, ¶ 9, n3; Ex. A, ¶ 7, n3.)

131266946v3 3125

17.    The *Bauer* <u>Amended</u> Counterclaim includes several screen-shots from Tri-State's website, which include pictures of children in bathtubs and emphasizing the need to "protect you from these harmful contaminants."  (<u>Ex. B, ¶ 10</u>; Ex. A, ¶ 8.)

18.    Tri-State's sales practices are allegedly similar to those of another company that was previously fined by the Federal Trade Commission for false and deceptive representations about the safety of drinking water and the efficacy of water treatment devices for the purpose of inducing consumers to purchase home water-purification devices.   (<u>Ex. B, ¶ 12</u>; Ex. A, ¶ 10.)

19.    The *Bauer* <u>Amended</u> Counterclaim alleges that Tri-State markets its water treatment products to create a reasonable expectation that its treatment products eliminate water safety problems exposed by the salesman's "scientific tests," completely remove toxins and contaminants that cause serious illness, create a "totally safe" water supply, and provide health benefits. (<u>Ex. B, ¶ 13</u>; Ex. A, ¶ 11.)

20.    The *Bauer* <u>Amended</u> Counterclaim alleges that, in reality, Tri-State's purported "scientific tests" are nothing more than sales gimmicks meant to frighten consumers into purchasing an expensive and unnecessary water treatment product. (<u>Ex. B, ¶ 14</u>; Ex. A, ¶ 12.)

21.    The *Bauer* <u>Amended</u> Counterclaim alleges that Tri-State lacks any legitimate basis for making its efficacy claims, and, as such, its claims are unfair, unjust, and deceptive. (<u>Ex. B, ¶ 15</u>; Ex. A, ¶ 13.)

22.    The *Bauer* <u>Amended</u> Counterclaim is brought not only on behalf of Michael and Stacey but as a putative multi-state class action on behalf of all persons who purchased a water

treatment system from Tri-State after an in-home water test and for the sole purpose of household use from March 4, 2008 to the date of class certification.  (Ex. B, ¶ 29; Ex. A, ¶ 15[1].)

23.     The *Bauer* Amended Counterclaim alleges that the class will ultimately consist of several thousand members in Illinois, Missouri, Kentucky, Arkansas, Louisiana, and Texas.  (Ex. B, ¶ 31; Ex. A, ¶ 17.)

24.     Count I of the *Bauer* Amended Counterclaim alleges that Tri-State's unfair and deceptive sales practices induced Michael, Stacey, and similarly situated individuals to pay for a product devoid of efficacy and, therefore, run afoul of the state consumer fraud acts of Illinois, Missouri, Kentucky, Arkansas, Louisiana, and Texas[2].  (Ex. B, ¶¶ 37-46; Ex. A, ¶¶ 21-27.)

25.     Count II of the *Bauer* Amended Counterclaim alleges violations of the state consumer fraud acts of Illinois, Missouri, Kentucky, Arkansas, Louisiana, and Texas by Home Depot U.S.A., Inc.  (Ex. B. ¶¶ 47-56.)

26.     Count III of the *Bauer* Amended Counterclaim alleges violations of the state consumer fraud acts of Illinois, Missouri, Kentucky, Arkansas, Louisiana, and Texas by Aquion, Inc., d/b/a/ Rainsoft.  (Ex. B. ¶¶ 57-66.)

27.     Count IV of the *Bauer* Amended Counterclaim alleges that Tri-State was unjustly enriched by its unfair and deceptive practices.  (Ex. B, ¶¶ 67-73; Ex. A, ¶¶ 31-35.)

28.     Count V of the *Bauer* Amended Counterclaim alleges that Home Depot U.S.A., Inc. was unjustly enriched by its unfair and deceptive practices.  (Ex. B, ¶¶ 74-80.)

---

[1] The original *Bauer* Counterclaim names a putative class of all persons who purchased a water treatment system from Tri-State after an in-home water test and for the sole purpose of household use from June 5, 2010 to the date of class certification.
[2] The *Bauer* Amended Counterclaim contends that the state consumer fraud acts of these states are "substantially similar" in that they were all "enacted and designed to protect consumers against unfair, deceptive, and/or fraudulent business practices."  (Ex. B., ¶ 38.)

131266946v3 3125

29.     Count VI of the *Bauer* Amended Counterclaim alleges that Aquion, Inc., d/b/a Rainsoft, was unjustly enriched by its unfair and deceptive trade practices.  (Ex. B, ¶¶ 81-87.)

30.     Count VII of the *Bauer* Amended Counterclaim alleges that Tri-State entered into agreements to participate in and perpetuate an unlawful act.  (Ex. B, ¶¶ 88-93.)

31.     Count VIII of the *Bauer* Amended Counterclaim alleges that Home Depot U.S.A., Inc. entered into agreements to participate in and perpetuate an unlawful act.  (Ex. B, ¶¶ 94-99.)

32.     Count IX of the *Bauer* Amended Counterclaim alleges that Aquion, Inc., d/b/a Rainsoft, entered into agreements to participate in and perpetuate an unlawful act.  (Ex. B, ¶¶ 100-105.)

33.     The *Bauer* Amended Counterclaim seeks class certification; a declaration that Tri-State is financially responsible for notifying class members of the pendency of the *Bauer* Amended Counterclaim; an order establishing Tri-State as constructive trustee of the unjust profits it earned; an order enjoining Tri-State from continuing in-home water testing, requiring it to remove misleading language from its website, providing restitution to the class members, and disgorging all revenues obtained as a result of violations of state law; an award of statutory damages; an award of compensatory, incidental, or consequential damages; an award of punitive damages; interest on the forgoing sums; and costs and attorney's fees.

**THE ACADIA POLICY**

34.     Acadia issued a multi-peril commercial lines policy to Tri-State for the policy period of September 11, 2014 to September 11, 2015 ("Policy").  The Policy provides, among other things, commercial general liability coverage, commercial liability umbrella coverage, and commercial excess liability coverage, as follows:

131266946v3 3125

**COMMERCIAL GENERAL LIABILITY POLICIES**

| POLICY  NO. | POLICY DATES | LIABILITY LIMITS |
|---|---|---|
| CPA 3072074-22 | 9/11/2014 to 9/11/2015 | $1,000,000 per occurrence; $1,000,000 personal and advertising injury; $2,000,000 aggregate |
| CPA 3072074-23 | 9/11/2015 to 9/11/2016 | $1,000,000 per occurrence; $1,000,000 personal and advertising injury; $2,000,000 aggregate |
| CPA 3075568-22 | 9/11/2014 to 9/11/2015 | $1,000,000 per occurrence; $1,000,000 personal and advertising injury; $2,000,000 aggregate |

**COMMERCIAL LIABILITY UMBRELLA POLICIES**

| POLICY NO. | POLICY DATES | LIABILITY LIMITS |
|---|---|---|
| CPA 3072074-22 | 9/11/2014 to 9/11/2015 | $1,000,000 per occurrence; $1,000,000 personal and advertising injury; $1,000,000 aggregate |
| CPA 3072074-23 | 9/11/2015 to 9/11/2016 | $1,000,000 per occurrence; $1,000,000 personal and advertising injury; $1,000,000 aggregate |

**COMMERCIAL EXCESS LIABILITY POLICY**

| POLICY NO. | POLICY DATES | LIABILITY LIMITS |
|---|---|---|
| CPA 3072074-22 | 9/11/2014 to 9/11/2015 | $1,000,000 per occurrence; $1,000,000 personal and advertising injury; $1,000,000 aggregate |

(A copy of the Policy is attached hereto as **Exhibit C** and incorporated herein by reference.)

35.    The Policy also includes commercial property coverage, commercial auto coverage, and commercial inland marine coverage.  (*See* Ex. C.)  However, neither the original *Bauer* Counterclaim nor the *Bauer* Amended Counterclaim seeks damages that would implicate coverage under those portions of the Policy and, therefore, those portions of the Policy are not germane to this Amended Complaint for Declaratory Judgment.

131266946v3 3125

<u>**COUNT I**</u>

<u>**NO "PERSONAL AND ADVERTISING INJURY" AS DEFINED IN THE COMMERCIAL GENERAL LIABILITY COVERAGE FORM**</u>

36.    Acadia adopts and realleges the allegations in paragraphs 1 through 35 of its <u>Amended</u> Complaint for Declaratory Judgment as paragraph 36 of Count I of its <u>Amended</u> Complaint for Declaratory Judgment as if fully set forth herein.

37.    The *Bauer* Counterclaim <u>and the *Bauer* Amended Counterclaim</u> do not seek damages for "bodily injury," "property damage," or "medical payments," and, therefore, Coverage A (relating to "bodily injury" and "property damage" liability) and Coverage C (relating to "medical payments") of the Commercial General Liability Coverage Form are not germane to this <u>Amended</u> Complaint for Declaratory Judgment.

38.    The Policy provides, in relevant part, the following with respect to the commercial general liability coverage afforded therein:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

\* \* \*

**SECTION I – COVERAGES**
\* \* \*
**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.    Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. \* \* \*

\* \* \*

131266946v3 3125

**b.**    This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

(*See* Ex. C.)

39.    The following definitions are found in Section V of the Commercial General Liability Coverage Form:

**1.**    "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

    **a.**    Notices that are published include material placed on the Internet or on similar electronic means of communication; and

    **b.**    Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

\* \* \*

**14.**    "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.**    False arrest, detention or imprisonment;

    **b.**    Malicious prosecution;

    **c.**    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.**    Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.**    Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.**    The use of another's advertising idea in your "advertisement"; or

    **g.**    Infringing upon another's copyright, trade dress or slogan in your "advertisement".

\* \* \*

**18.**    "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

    **a.**    An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    **b.**    Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

131266946v3 3125

(*See* Ex. C.)

40.    The *Bauer* <u>Amended</u> Counterclaim alleges that Tri-State engaged in:

<u>"unjust, unfair, and deceptive practices of selling water treatment systems
to individuals on a municipal water system by in-home testing procedures
done by a salesman.   Counter-Defendants fail to disclose, despite
uniformly representing to the contrary, that their in-home water treatment
testing does not provide specific in-depth analysis that is necessary and
required to determine if an individual needs a water treatment system.
Unknown to the consumer, the in-home water tests conducted are
designed only to identify mineral content in the consumer's water and are
not designed to detect contaminates.   Notwithstanding the deceptively
narrow scope of the water test, the Defendant induces
individuals to purchase their water treatment systems with the promise of
'[r]emov[ing] toxins and contaminants…that can cause serious illness or
disease' and that the systems will create water 'completely free from all
dangerous contaminates' and a water supply that is 'totally safe.'  Counter-
Defendants further warrant 'health benefits of using treated water.'  When
in fact, according to the Federal Trade Commission, no in-home test can
determine the necessity of a water treatment system; no water treatment
system can remove all contaminates from drinking water.  Furthermore, no
system has been clinically tested and proven to remove *all* contaminants
from drinking water, and no clinical evidence suggests that treated water
promotes certain health benefits."  (Ex. B, ¶ 1; Ex. A, ¶ 1.)</u>

41.    The Policy does not provide coverage for the <u>original</u> *Bauer* Counterclaim <u>or the</u>
*Bauer* <u>Amended Counterclaim</u> because they do not allege damages arising from "personal and
advertising injury" as that term is defined in the Commercial General Liability Coverage Form,
in that a systematic practice of high-pressure sales tactics, misrepresentations, and
unsubstantiated claims does not constitute any of the offenses elucidated in the definition of
"personal and advertising injury."

42.    Acadia has and had no duty under the Policy to defend Tri-State against the
<u>original</u> *Bauer* Counterclaim <u>or the</u> *Bauer* <u>Amended Counterclaim</u>, or to indemnify Tri-State for
any judgment or settlement entered in the <u>original</u> *Bauer* Counterclaim <u>or the</u> *Bauer* <u>Amended
Counterclaim</u>.

131266946v3 3125

43.     An actual controversy exists between Acadia, Tri-State, Michael, and Stacey, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Acadia, respectfully prays that this Honorable Court:

a.     Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Policy;

b.     Find and declare that the <u>original</u> *Bauer* Counterclaim <u>and the *Bauer* Amended Counterclaim</u> do not allege a "personal and advertising injury" sufficient to trigger coverage under the Commercial General Liability insuring agreement;

c.     Find and declare that Acadia has and had no duty under the Policy to defend Tri-State against the <u>original</u> *Bauer* Counterclaim <u>or the *Bauer* Amended Counterclaim</u>, or to indemnify Tri-State for any judgment or settlement entered in the <u>original</u> *Bauer* Counterclaim <u>or the *Bauer* Amended Counterclaim</u>; and

d.     Grant Acadia such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT II

## THE COMMERCIAL GENERAL LIABILITY COVERAGE FORM'S "MATERIAL PUBLISHED WITH KNOWLEDGE OF FALSITY" EXCLUSION BARS COVERAGE

44.     Acadia adopts and realleges the allegations in paragraphs 1 through 43 of its <u>Amended</u> Complaint for Declaratory Judgment as paragraph 44 of Count II of its <u>Amended</u> Complaint for Declaratory Judgment as if fully set forth herein.

45.     The General Commercial Liability Coverage Form contains the following exclusion, referred to herein as the "Material Published With Knowledge of Falsity" Exclusion:

**2.     Exclusions**

This insurance does not apply to:

**b.     Material Published With Knowledge Of Falsity**

11

131266946v3 3125

*"**Personal and advertising injury**" **arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.***

(*See* Ex. C., Emphasis added.)

46.     The *Bauer* <u>Amended</u> Counterclaim alleges that Tri-State "market[s] and sell[s] Tri-State water treatment products to create the reasonable expectation with purchasers that its water treatment products (1) eliminate the water safety problems evidenced by the salesman's 'scientific tests;' (2) completely remove toxins and contaminants that cause serious illness or disease; (3) create a water supply that is 'totally safe;' and (4) provide health benefits. <u>(Ex. B, ¶ 13</u>; Ex. A, ¶ 11..)

47.     The *Bauer* <u>Amended</u> Counterclaim further alleges that <u>"Contrary to these representations, Rainsoft water treatment, in fact, does none of these things.  Defendant's 'scientific tests' are not adequate water tests to determine the necessity of a water treatment system and are a preposterous sales gimmick meant to frighten and induce the individual consumer to purchase an expensive water treatment system.  Furthermore, the product does not create a water supply that is 'totally safe' or 'eliminate all contaminants' or provide any 'health benefits.'"  (Ex. B, ¶ 14</u>; Ex. A, ¶ 12.)

48.     The *Bauer* <u>Amended</u> Counterclaim alleges that Tri-State "ha[s] no legitimate basis for making any of their efficacy claims, and, thus, such claims are unfair, unjust, and deceptive." <u>(Ex. B, ¶ 15</u>; Ex. A, ¶ 13.)

49.     The *Bauer* <u>Amended</u> Counterclaim further alleges that Tri-State "has committed unfair and/or deceptive acts by engaging in the acts and practices alleged herein including, but not limited to, failing to disclose that the tests administered in-home at the individuals dwelling have no proven efficacy; that such inaccurate and unreliable test results induced the individuals to purchase water treatment products; and that the water treatment products cannot completely

12

eliminate toxins or contaminants in water and make water 'totally safe'."  (Ex. B, ¶ 41; Ex. A, ¶ 24.)

50.     Moreover, the *Bauer* <u>Amended</u> Counterclaim alleges that Tri-State "intended that Plaintiff and the other Class members would rely on the unfair and deceptive acts and omissions alleged herein so that they would buy the Defendant's water treatment products."  (<u>Ex. B, ¶ 42</u>; Ex. A, ¶ 25.)

51.     The *Bauer* <u>Amended</u> Counterclaim alleges that Tri-State's actions were "willful and wanton, constitute intentional violations of the Consumer Acts."  (<u>Ex. B, ¶ 43</u>; Ex. A, ¶ 26.)

52.     To the extent that the <u>original</u> *Bauer* Counterclaim <u>or the *Bauer* Amended Counterclaim</u> alleges "personal and advertising injury," which Acadia expressly denies that it does, the "Material Published With Knowledge of Falsity" Exclusion bars coverage under Coverage B of the General Commercial Liability Coverage Form for the damages alleged in the <u>original</u> *Bauer* Counterclaim <u>or the *Bauer* Amended Counterclaim</u>.

53.     Acadia has and had no duty under the Policy to defend Tri-State against the <u>original</u> *Bauer* Counterclaim <u>or the *Bauer* Amended Counterclaim</u>, or to indemnify Tri-State for any judgment or settlement entered in the <u>original</u> *Bauer* Counterclaim <u>or the *Bauer* Amended Counterclaim</u>.

54.     An actual controversy exists between Acadia, Tri-State, Michael, and Stacey, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Acadia, respectfully prays that this Honorable Court:

a.     Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Policy;

b.    Find and declare that the "Material Published With Knowledge of Falsity" Exclusion bars all coverage under the General Commercial Liability Coverage Form for the claims asserted in the <u>original</u> *Bauer* Counterclaim and the *Bauer* <u>Amended Counterclaim</u>;

c.    Find and declare that Acadia has and had no duty under the Policy to defend Tri-State against the <u>original</u> *Bauer* Counterclaim <u>or the</u> *Bauer* <u>Amended Counterclaim</u>, or to indemnify Tri-State for any judgment or settlement entered in the <u>original</u> *Bauer* Counterclaim <u>or the</u> *Bauer* <u>Amended Counterclaim</u>; and

d.    Grant Acadia such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT III

## THE GENERAL COMMERCIAL LIABILITY COVERAGE FORM'S "QUALITY OR PERFORMANCE OF GOODS – FAILURE TO CONFORM TO STATEMENTS" EXCLUSION BARS COVERAGE

55.    Acadia adopts and realleges the allegations in paragraphs 1 through 54 of its <u>Amended</u> Complaint for Declaratory Judgment as paragraph 55 of Count III of its <u>Amended</u> Complaint for Declaratory Judgment as if fully set forth herein.

56.    The General Commercial Liability Coverage Form contains the following exclusion, referred to herein as the "Quality or Performance of Goods – Failure to Conform to Statements" Exclusion:

**2.    Exclusions**

This insurance does not apply to:

**g.    Quality Or Performance of Goods – Failure To Conform To Statements**

<u>***"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement."***</u>

(*See* Ex. C., Emphasis added.)

57.    The *Bauer* <u>Amended</u> Counterclaim alleges that Tri-State "fail[s] to disclose, despite uniformly representing to the contrary, that its in-home water treatment testing does <u>not</u>

14

provide specific in-depth analysis that is necessary and required to determine if an individual needs a water treatment system." (Ex. B., ¶ 1; Ex. A., ¶ 1.)

58. The *Bauer* <u>Amended</u> Counterclaim alleges that Tri-State "further warrant[s] 'health benefits of using treated water.' When, in fact, according to the Federal Trade Commission, no in-home test can determine the necessity of a water treatment system; no water treatment system can remove all contaminates from drinking water." (<u>Ex. B, ¶ 1</u>; Ex. A, ¶ 1.)

59. The *Bauer* <u>Amended</u> Counterclaim alleges that Tri-State "market[s] and sell[s] <u>Rainsoft</u> water treatment products to create the reasonable expectation with purchasers that its water treatment products (1) eliminate the water safety problems evidenced by the salesman's 'scientific tests;' (2) completely remove toxins and contaminants that cause serious illness or disease; (3) create a water supply that is 'totally safe;' and (4) provide health benefits. (<u>Ex. B, ¶ 13</u>; Ex. A, ¶ 11.)

60. The *Bauer* <u>Amended</u> Counterclaim further alleges that "Contrary to these representations, <u>Rainsoft water treatment</u>, in fact, does none of these things. Defendant's 'scientific tests' are not adequate water tests to determine the necessity of a water treatment system and are a preposterous sales gimmick meant to frighten and induce the individual consumer to purchase an expensive water treatment system; furthermore, the product does not create a water supply that is 'totally safe' or 'eliminate all contaminants' or provide any 'health benefits.'" (<u>Ex. B, ¶ 14</u>; Ex. A, ¶ 12.)

61. The *Bauer* <u>Amended</u> Counterclaim alleges that Tri-State "ha[s] no legitimate basis for making any of their efficacy claims, and, thus, such claims are unfair, unjust, and deceptive." (<u>Ex. B, ¶ 15</u>; Ex. A, ¶ 13.)

131266946v3 3125

62.    The *Bauer* Amended Counterclaim further alleges that Tri-State "has committed unfair and/or deceptive acts by engaging in the acts and practices alleged herein including, but not limited to, failing to disclose that the tests administered in-home at the individuals dwelling have no proven efficacy; that such inaccurate and unreliable test results induced the individuals to purchase water treatment products; and that the water treatment products cannot completely eliminate toxins or contaminants in water and make water 'totally safe'." (Ex. B, ¶ 41; Ex. A, ¶ 24.)

63.    To the extent that the original *Bauer* Counterclaim or the *Bauer* Amended Counterclaim alleges "personal and advertising injury," which Acadia expressly denies that it does, the "Quality Or Performance of Goods – Failure to Conform To Statements" Exclusion bars coverage under Coverage B of the Commercial General Liability Coverage Form for the damages alleged in the original *Bauer* Counterclaim or the *Bauer* Amended Counterclaim.

64.    Acadia has and had no duty under the Policy to defend Tri-State against the original *Bauer* Counterclaim or the *Bauer* Amended Counterclaim, or to indemnify Tri-State for any judgment or settlement entered in the original *Bauer* Counterclaim or the *Bauer* Amended Counterclaim.

65.    An actual controversy exists between Acadia, Tri-State, Michael, and Stacey, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Acadia, respectfully prays that this Honorable Court:

a.    Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Policy;

b.    Find and declare that the "Quality Or Performance of Goods – Failure to Conform To Statements" Exclusion bars all coverage under the

16

Commercial General Liability Coverage Form for the claims asserted in the <u>original</u> *Bauer* Counterclaim <u>and the</u> *Bauer* <u>Amended Counterclaim</u>;

c.   Find and declare that Acadia has and had no duty under the Policy to defend Tri-State against the <u>original</u> *Bauer* Counterclaim <u>or the</u> *Bauer* <u>Amended Counterclaim</u>, or to indemnify Tri-State for any judgment or settlement entered in the <u>original</u> *Bauer* Counterclaim <u>or the</u> *Bauer* <u>Amended Counterclaim</u>; and

d.   Grant Acadia such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT IV

## THE GENERAL COMMERCIAL LIABILITY COVERAGE FORM'S "MATERIAL PUBLISHED PRIOR TO POLICY PERIOD" EXCLUSION BARS COVERAGE

66.   Acadia adopts and realleges the allegations in paragraphs 1 through 65 of its <u>Amended</u> Complaint for Declaratory Judgment as paragraph 66 of Count IV of its <u>Amended</u> Complaint for Declaratory Judgment as if fully set forth herein.

67.   The General Commercial Liability Coverage Form contains the following exclusion, referred to herein as the "Material Published Prior to Policy Period" Exclusion:

**2.     Exclusions**

This insurance does not apply to:

**c.     Material Published Prior To Policy Period**

***"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period."***

(*See* Ex. C., Emphasis added.)

68.   The beginning of the Policy period was September 11, 2014.  (*See* Ex. C.)

69.   The *Bauer* <u>Amended</u> Counterclaim alleges that "[i]n reliance upon each and all of the misrepresentations detailed herein, Counter Plaintiffs purchased a Tri-State water treatment

17

system comprised of a Rainsoft EC4 and P12 products from Defendant on March 4, 2013." (Ex. B, ¶ 5; Ex. A, ¶ 5.)

70.     The *Bauer* Amended Counterclaim further alleges that the putative class will consist of "all persons who purchased a water treatment system from Tri-State, Rainsoft and Home Depot, after an in-home water test, for the sole purpose of household use from March 4, 2008 to the date of class certification." (Ex. B, ¶ 29; Ex. A, ¶ 15.)

71.     To the extent that the original *Bauer* Counterclaim or the *Bauer* Amended Counterclaim alleges "personal and advertising injury," which Acadia expressly denies that it does, the "Material Published Prior to Policy Period" Exclusion bars coverage under Coverage B of the Commercial General Liability Coverage Form for the damages alleged in the original *Bauer* Counterclaim or the *Bauer* Amended Counterclaim.

72.     Acadia has and had no duty under the Policy to defend Tri-State against the original *Bauer* Counterclaim or the *Bauer* Amended Counterclaim, or to indemnify Tri-State for any judgment or settlement entered in the *Bauer* Amended Counterclaim.

73.     An actual controversy exists between Acadia, Tri-State, Michael, and Stacey, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Acadia, respectfully prays that this Honorable Court:

a.     Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Policy;

b.     Find and declare that the "Material Published Prior to Policy Period" Exclusion bars all coverage under the Commercial General Liability Coverage Form for the claims asserted in the original *Bauer* Counterclaim and the *Bauer* Amended Counterclaim;

18

131266946v3 3125

c.   Find and declare that Acadia has and had no duty under the Policy to defend Tri-State against the <u>original</u> *Bauer* Counterclaim <u>or the *Bauer* Amended Counterclaim</u>, or to indemnify Tri-State for any judgment or settlement entered in the <u>original</u> *Bauer* Counterclaim <u>or the *Bauer* Amended Counterclaim</u>; and

d.   Grant Acadia such other and further relief that the Court deems proper under the facts and circumstances.

## COUNT V

## NO "PERSONAL AND ADVERTISING INJURY" AS DEFINED IN THE COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM

74.   Acadia adopts and realleges the allegations in paragraphs 1 through 73 of its <u>Amended</u> Complaint for Declaratory Judgment as paragraph 74 of Count V of its <u>Amended</u> Complaint for Declaratory Judgment as if fully set forth herein.

75.   The <u>original</u> *Bauer* Counterclaim <u>and the *Bauer* Amended Counterclaim</u> do not seek damages for "bodily injury" or "property damage," and, therefore, Coverage A (relating to "bodily injury" and "property damage" liability) of the Commercial Liability Umbrella Coverage Form is not germane to this <u>Amended</u> Complaint for Declaratory Judgment.

76.   The Policy provides, in relevant part, the following with respect to the commercial liability umbrella coverage afforded therein:

### COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM

\* \* \*

**SECTION I – COVERAGES**

\* \* \*

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

1.   **Insuring Agreement**

a.   We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "personal and advertising injury" when the "underlying

insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. At our discretion, we may investigate any offense that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend. * * *

\* \* \*

    **b.**    This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

(*See* Ex. C.)

77.    The following definitions are found in Section V of the Commercial Liability Umbrella Coverage Form:

    **1.**    "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

    **a.**    Notices that are published include material placed on the Internet or on similar electronic means of communication; and

    **b.**    Regarding websites, only that part of a website that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

\* \* \*

    **3.**    "Bodily injury" means bodily injury, disability, sickness, or disease sustained by a person, including death resulting from any of these at any time. "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury".

\* \* \*

    **14.**    "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.**    False arrest, detention or imprisonment;

20

b.    Malicious prosecution;

c.    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d.    Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e.    Oral or written publication, in any manner, of material that violates a person's right of privacy;

f.    The use of another's advertising idea in your "advertisement"; or

g.    Infringing upon another's copyright, trade dress or slogan in your "advertisement".

\* \* \*

19.    "Retained limit" means the available limits of "underlying insurance" scheduled in the Declarations or the "self-insured retention", whichever applies.

20.    "Self-insured retention" means the dollar amount listed in the Declarations that will be paid by the insured before this insurance becomes applicable only with respect to "occurrences" or offenses not covered by the "underlying insurance". The "self-insured retention" does not apply to "occurrences" or offenses which would have been covered by "underlying insurance" but for the exhaustion of applicable limits.

21.    "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a.    An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b.    Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent or the "underlying insurer's" consent.

\* \* \*

23.    "Ultimate net loss" means the total sum, after reduction for recoveries or salvages collectible, that the insured becomes legally obligated to pay as

21

131266946v3 3125

damages by reason of settlement or judgments or any arbitration or other alternate dispute method entered into with our consent or the "underlying insurer's" consent.

**24.** "Underlying insurance" means any policies of insurance listed in the Declarations under the Schedule of "underlying insurance".

**25.** "Underlying insurer" means any insurer who provides any policy of insurance listed in the Schedule of "underlying insurance".

(*See* Ex. C.)

78.    The *Bauer* Amended Counterclaim alleges that Tri-State engaged in:

"unjust, unfair, and deceptive practices of selling water treatment systems to individuals on a municipal water system by in-home testing procedures done by a salesman.   Counter-Defendants fail to disclose, despite uniformly representing to the contrary, that its in-home water treatment testing does not provide specific in-depth analysis that is necessary and required to determine if an individual needs a water treatment system. Unknown to the consumer, the in-home water tests conducted are designed only to identify mineral content in the consumer's water and are not designed to detect contaminants.   Notwithstanding the deceptively narrow scope of the water test, the Defendant induces individuals to purchase its water treatment systems entirely premised on deceptive testing practices with the promise of '[r]emov[ing] toxins and contaminants…that can cause serious illness or disease' and that the systems will create water 'completely free from all dangerous contaminates' and a water supply that is 'totally safe.' Counter-Defendants further warrant 'health benefits of using treated water.'  When in fact, according to the Federal Trade Commission, no in-home test can determine the necessity of a water treatment system; no water treatment system can remove all contaminates from drinking water.  Furthermore, no system has been clinically tested and proven to remove *all* contaminants from drinking water, and no clinical evidence suggests that treated water promotes certain health benefits."  (Ex. B, ¶ 1; Ex. A, ¶ 1.)

79.    The Commercial Liability Umbrella Coverage Form does not provide coverage for the original *Bauer* Counterclaim or the *Bauer* Amended Counterclaim because they do not allege damages arising from "personal and advertising injury" as that term is defined in the Commercial Liability Umbrella Coverage Form, in that a systematic practice of high-pressure

131266946v3 3125

sales tactics, misrepresentations, and unsubstantiated claims does not constitute any of the offenses elucidated in the definition of "personal and advertising injury."

80.    Acadia has and had no duty under the Policy to defend Tri-State against the original *Bauer* Counterclaim or the *Bauer* Amended Counterclaim, or to indemnify Tri-State for any judgment or settlement entered in the original *Bauer* Counterclaim or the *Bauer* Amended Counterclaim.

81.    An actual controversy exists between Acadia, Tri-State, Michael, and Stacey, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Acadia, respectfully prays that this Honorable Court:

a.    Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Policy;

b.    Find and declare that the original *Bauer* Counterclaim and the *Bauer* Amended Counterclaim do not allege a "personal and advertising injury" sufficient to trigger coverage under the Commercial Liability Umbrella Coverage insuring agreement;

c.    Find and declare that Acadia has and had no duty under the Policy to defend Tri-State against the original *Bauer* Counterclaim or the *Bauer* Amended Counterclaim, or to indemnify Tri-State for any judgment or settlement entered in the original *Bauer* Counterclaim or the *Bauer* Amended Counterclaim; and

d.    Grant Acadia such other and further relief that the Court deems proper under the facts and circumstances.

131266946v3 3125

## COUNT VI

## THE COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM'S "MATERIAL PUBLISHED WITH KNOWLEDGE OF FALSITY" EXCLUSION BARS COVERAGE

82.     Acadia adopts and realleges the allegations in paragraphs 1 through 81 of its Amended Complaint for Declaratory Judgment as paragraph 82 of Count VI of its Amended Complaint for Declaratory Judgment as if fully set forth herein.

83.     The Commercial Liability Umbrella Coverage Form contains the following exclusion, referred to herein as the "Material Published With Knowledge of Falsity" Exclusion:

**2.     Exclusions**

This insurance does not apply to:

**a.     "Personal and advertising injury":**

**(2)     Material Published With Knowledge Of Falsity**

***Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.***

(*See* Ex. C., Emphasis added.)

84.     The *Bauer* Amended Counterclaim alleges that Tri-State "market[s] and sell[s] Rainsoft water treatment products to create the reasonable expectation with purchasers that its water treatment products (1) eliminate the water safety problems evidenced by the salesman's 'scientific tests;' (2) completely remove toxins and contaminants that cause serious illness or disease; (3) create a water supply that is 'totally safe;' and (4) provide health benefits. (Ex. B, ¶ 13; Ex. A, ¶ 11.)

85.     The *Bauer* Amended Counterclaim further alleges that "Contrary to these representations, Rainsoft water treatment, in fact, does none of these things. Defendant's 'scientific tests' are not adequate water tests to determine the necessity of a water treatment

system and are a preposterous sales gimmick meant to frighten and induce the individual consumer to purchase an expensive water treatment system; furthermore, the product does not create a water supply that is 'totally safe' or 'eliminate all contaminants' or provide any 'health benefits.'"  (<u>Ex. B, ¶ 14</u>; Ex. A, ¶ 12.)

86.    The *Bauer* <u>Amended</u> Counterclaim alleges that Tri-State "ha[s] no legitimate basis for making any of their efficacy claims, and, thus, such claims are unfair, unjust, and deceptive."  (<u>Ex. B, ¶ 15</u>; Ex. A, ¶ 13.)

87.    The *Bauer* <u>Amended</u> Counterclaim further alleges that Tri-State "has committed unfair and/or deceptive acts by engaging in the acts and practices alleged herein including, but not limited to, failing to disclose that the tests administered in-home at the individuals dwelling have no proven efficacy; that such inaccurate and unreliable test results induced the individuals to purchase water treatment products; and that the water treatment products cannot completely eliminate toxins or contaminants in water and make water 'totally safe'."  (<u>Ex. B, ¶ 41</u>; Ex. A, ¶ 24.)

88.    Moreover, the *Bauer* <u>Amended</u> Counterclaim alleges that Tri-State "intended that Plaintiff and the other Class members would rely on the unfair and deceptive acts and omissions alleged herein so that they would buy the Defendant's water treatment products."  (<u>Ex. B, ¶ 42</u>; Ex. A, ¶ 25.)

89.    The *Bauer* <u>Amended</u> Counterclaim alleges that Tri-State's actions were "willful and wanton, constitute intentional violations of the Consumer Acts."  (<u>Ex. B, ¶ 43</u>; Ex. A, ¶ 26.)

90.    To the extent that the <u>original</u> *Bauer* Counterclaim <u>or the *Bauer* Amended Counterclaim</u> alleges "personal and advertising injury," which Acadia expressly denies that it does, the "Material Published With Knowledge of Falsity" Exclusion bars coverage under

131266946v3 3125

Coverage B of the Commercial Liability Umbrella Coverage Form for the damages alleged in the original *Bauer* Counterclaim <u>or the *Bauer* Amended Counterclaim</u>.

91.    Acadia has and had no duty under the Policy to defend Tri-State against the <u>original</u> *Bauer* Counterclaim <u>or the *Bauer* Amended Counterclaim</u>, or to indemnify Tri-State for any judgment or settlement entered in the <u>original</u> *Bauer* Counterclaim <u>or the *Bauer* Amended Counterclaim</u>.

92.    An actual controversy exists between Acadia, Tri-State, Michael, and Stacey, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Acadia, respectfully prays that this Honorable Court:

a.    Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Policy;

b.    Find and declare that the "Material Published With Knowledge of Falsity" Exclusion bars all coverage under the Commercial Liability Umbrella Coverage Form for the claims asserted in the <u>original</u> *Bauer* Counterclaim <u>or the *Bauer* Amended Counterclaim</u>;

c.    Find and declare that Acadia has and had no duty under the Policy to defend Tri-State against the <u>original</u> *Bauer* Counterclaim <u>or the *Bauer* Amended Counterclaim</u>, or to indemnify Tri-State for any judgment or settlement entered in the <u>original</u> *Bauer* Counterclaim <u>or the *Bauer* Amended Counterclaim</u>; and

d.    Grant Acadia such other and further relief that the Court deems proper under the facts and circumstances.

131266946v3 3125

## COUNT VII

## THE COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM'S "QUALITY OR PERFORMANCE OF GOODS – FAILURE TO CONFORM TO STATEMENTS" EXCLUSION BARS COVERAGE

93.    Acadia adopts and realleges the allegations in paragraphs 1 through 92 of its Amended Complaint for Declaratory Judgment as paragraph 93 of Count VII of its Amended Complaint for Declaratory Judgment as if fully set forth herein.

94.    The Commercial Liability Umbrella Form contains the following exclusion, referred to herein as the "Quality or Performance of Goods – Failure to Conform to Statements" Exclusion:

2.    **Exclusions**

This insurance does not apply to:

a.    **"Personal and advertising injury":**

(7)    **Material Published With Knowledge Of Falsity**

*Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".*

(*See* Ex. C., Emphasis added.)

95.    The *Bauer* Amended Counterclaim alleges that Tri-State "fail[s] to disclose, despite uniformly representing to the contrary, that their in-home water treatment testing does not provide specific in-depth analysis that is necessary and required to determine if an individual needs a water treatment system."  (Ex. B., ¶ 1; Ex. A., ¶ 1.)

96.    The *Bauer* Amended Counterclaim alleges that Tri-State "further warrant[s] 'health benefits of using treated water.'  When, in fact, according to the Federal Trade Commission, no in-home test can determine the necessity of a water treatment system; no water treatment system can remove all contaminates from drinking water."  (Ex. B, ¶ 1; Ex. A., ¶ 1.)

27

97.     The *Bauer* <u>Amended</u> Counterclaim alleges that Tri-State "market[s] and sell[s] <u>Rainsoft</u> water treatment products to create the reasonable expectation with purchasers that its water treatment products (1) eliminate the water safety problems evidenced by the salesman's 'scientific tests;' (2) completely remove toxins and contaminants that cause serious illness or disease; (3) create a water supply that is 'totally safe;' and (4) provide health benefits.  (<u>Ex. B, ¶ 13</u>; Ex. A., ¶ 11.)

98.     The *Bauer* <u>Amended</u> Counterclaim further alleges that "Contrary to these representations, <u>Rainsoft water treatment</u>, in fact, does none of these things.  Defendant's 'scientific tests' are not adequate water tests to determine the necessity of a water treatment system and are a preposterous sales gimmick meant to frighten and induce the individual consumer to purchase an expensive water treatment system; furthermore, the product does not create a water supply that is 'totally safe' or 'eliminate all contaminants' or provide any 'health benefits.'"  (<u>Ex. B, ¶ 14</u>; Ex. A., ¶ 12.)

99.     The *Bauer* <u>Amended</u> Counterclaim alleges that Tri-State "ha[s] no legitimate basis for making any of its efficacy claims, and, thus, such claims are unfair, unjust, and deceptive." (<u>Ex. B, ¶ 15</u>; Ex. A., ¶ 13.)

100.     The *Bauer* <u>Amended</u> Counterclaim further alleges that Tri-State "has committed unfair and/or deceptive acts by engaging in the acts and practices alleged herein including, but not limited to, failing to disclose that the tests administered in-home at the individuals dwelling have no proven efficacy; that such inaccurate and unreliable test results induced the individuals to purchase water treatment products; and that the water treatment products cannot completely eliminate toxins or contaminants in water and make water 'totally safe'."  (<u>Ex. B, ¶ 41</u>; Ex. A, ¶ 24.)

131266946v3 3125

101.    To the extent that the original *Bauer* Counterclaim or the *Bauer* Amended Counterclaim alleges "personal and advertising injury," which Acadia expressly denies that they do, the "Quality Or Performance of Goods – Failure to Conform To Statements" Exclusion bars coverage under Coverage B of the Commercial Liability Umbrella Coverage Form for the damages alleged in the original *Bauer* Counterclaim or the *Bauer* Amended Counterclaim.

102.    Acadia has and had no duty under the Policy to defend Tri-State against the *Bauer* Amended Counterclaim, or to indemnify Tri-State for any judgment or settlement entered in the original *Bauer* Counterclaim or the *Bauer* Amended Counterclaim.

103.    An actual controversy exists between Acadia, Tri-State, Michael, and Stacey, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Acadia, respectfully prays that this Honorable Court:

a.    Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Policy;

b.    Find and declare that the "Quality Or Performance of Goods – Failure to Conform To Statements" Exclusion bars all coverage under the Commercial Liability Umbrella Coverage Form for the claims asserted in the original *Bauer* Counterclaim and the *Bauer* Amended Counterclaim;

c.    Find and declare that Acadia has and had no duty under the Policy to defend Tri-State against the original *Bauer* Counterclaim or the *Bauer* Amended Counterclaim, or to indemnify Tri-State for any judgment or settlement entered in the original *Bauer* Counterclaim or the *Bauer* Amended Counterclaim; and

d.    Grant Acadia such other and further relief that the Court deems proper under the facts and circumstances.

131266946v3 3125

## COUNT VIII

## THE COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM'S "MATERIAL PUBLISHED PRIOR TO POLICY PERIOD" EXCLUSION BARS COVERAGE

104.    Acadia adopts and realleges the allegations in paragraphs 1 through 103 of its Amended Complaint for Declaratory Judgment as paragraph 104 of Count VIII of its Amended Complaint for Declaratory Judgment as if fully set forth herein.

105.    The Commercial Liability Umbrella Form contains the following exclusion, referred to herein as the "Material Published Prior to Policy Period" Exclusion:

**2.      Exclusions**

This insurance does not apply to:

**a.      "Personal and advertising injury":**

**(3)      Material Published Prior To Policy Period**

***Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.***

(*See* Ex. C., Emphasis added.)

106.    The beginning of the Policy period was September 11, 2014.  (*See* Ex. C.)

107.    The *Bauer* Amended Counterclaim alleges that "[i]n reliance upon each and all of the misrepresentations detailed herein, Counter Plaintiffs purchased a Tri-State water treatment system comprised of a Rainsoft EC4 and P12 products from Defendant on March 4, 2013."  (Ex. B, ¶ 5; Ex. A, ¶ 5.)

108.    The *Bauer* Amended Counterclaim further alleges that the putative class will consist of "all persons who purchased a water treatment system from Tri-State, Rainsoft and Home Depot, after an in-home water test, for the sole purpose of household use from March 4, 2008 to the date of class certification."  (Ex. B, ¶ 29; Ex. A, ¶ 15.)

30

109.    To the extent that the <u>original</u> *Bauer* Counterclaim <u>or the *Bauer*</u> Amended <u>Counterclaim</u> alleges "personal and advertising injury," which Acadia expressly denies that they do, the "Material Published Prior to Policy Period" Exclusion bars coverage under Coverage B of the Commercial Liability Umbrella Coverage Form for the damages alleged in the <u>original</u> *Bauer* Counterclaim <u>or the *Bauer*</u> Amended Counterclaim.

110.    Acadia has and had no duty under the Policy to defend Tri-State against the <u>original</u> *Bauer* Counterclaim <u>or the *Bauer*</u> Amended Counterclaim, or to indemnify Tri-State for any judgment or settlement entered in the <u>original</u> *Bauer* Counterclaim <u>or the *Bauer*</u> Amended <u>Counterclaim</u>.

111.    An actual controversy exists between Acadia, Tri-State, Michael, and Stacey, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Acadia, respectfully prays that this Honorable Court:

a.    Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Policy;

b.    Find and declare that the "Material Published Prior to Policy Period" Exclusion bars all coverage under the Commercial Liability Umbrella Coverage Form for the claims asserted in the <u>original</u> *Bauer* Counterclaim <u>and the *Bauer*</u> Amended Counterclaim;

c.    Find and declare that Acadia has and had no duty under the Policy to defend Tri-State against the <u>original</u> *Bauer* Counterclaim <u>or the *Bauer*</u> <u>Amended Counterclaim</u>, or to indemnify Tri-State for any judgment or settlement entered in the <u>original</u> *Bauer* Counterclaim <u>or the *Bauer*</u> <u>Amended Counterclaim</u>; and

d.    Grant Acadia such other and further relief that the Court deems proper under the facts and circumstances.

31

<u>COUNT IX</u>

**<u>NO COVERAGE UNDER THE COMMERCIAL EXCESS LIABILITY COVERAGE
FORM BECAUSE NO COVERAGE UNDER THE COMMERCIAL GENERAL
LIABILITY COVERAGE FORM</u>**

112.    Acadia adopts and realleges the allegations in paragraphs 1 through 111 of its

<u>Amended</u> Complaint for Declaratory Judgment as paragraph 112 of Count IX of its <u>Amended</u>

Complaint for Declaratory Judgment as if fully set forth herein.

113.    The Policy provides, in relevant part, the following with respect to the

commercial excess liability coverage afforded therein:

**COMMERCIAL EXCESS LIABILITY COVERAGE FORM**

\* \* \*

**SECTION I – COVERAGES**

**1.    Insuring Agreement**

> **a.**    We will pay on behalf of the insured the "ultimate net loss" in
> excess of the "retained limit" because of "injury or damage" to
> which insurance provided under this Coverage Part applies.
>
> We will have the right and duty to defend the insured against any
> suit seeking damages for such "injury or damage" ***<u>when the
> applicable limits of "controlling underlying insurance" have
> been exhausted</u>*** in accordance with the provisions of such
> "controlling underlying insurance".
>
> When we have no duty to defend, we will have the right to defend,
> or to participate in the defense of, the insured against any other suit
> seeking damages for "injury or damage".
>
> However, we will have no duty to defend the insured against any
> suit seeking damages for which insurance under this policy does
> not apply.
>
> At our discretion, we may investigate any "event" that may involve
> this insurance and settle any resultant claim or suit, for which we
> have the duty to defend. \* \* \*

\* \* \*

131266946v3 3125

2. **Exclusions**

The following exclusions, and any other exclusions added by endorsement, apply to this Coverage Part. ***In addition, the exclusions applicable to any "controlling underlying insurance" apply to this insurance*** unless superseded by the following exclusions, or superseded by any other exclusions added by endorsement to this Coverage Part. * * *

\* \* \*

## SECTION III – CONDITIONS

The following Conditions apply. In addition, the Conditions applicable to any "controlling underlying insurance" are also applicable to the coverage provided under this insurance unless superseded by the following conditions. * * *

\* \* \*

10. **Loss Payable**

Liability under this Coverage Part does not apply to a given claim unless and until:

a. The insured or insured's "controlling underlying insurer" has become obligated to pay the "retained limit"; and

b. The obligation of the insured to pay the "ultimate net loss" in excess of the "retained limit" has been determined by a final settlement or judgment or written agreement among the insured, claimant, "controlling underlying insurer" (or a representative of one or more of these) and us.

(*See* Ex. C, Emphasis added.)

114.    The following definitions are found in Section IV of the Commercial Excess

Liability Coverage Form:

## SECTION IV - DEFINITIONS

The definitions applicable to any "controlling underlying insurance" also apply to this insurance. In addition, the following Definitions apply.

1. "Controlling underlying insurance" means any policy of insurance or self-insurance listed in the Declarations under the Schedule of "controlling underlying insurance".

131266946v3 3125

2.      "Controlling underlying insurer" means any insurer who provides any policy of insurance listed in the Declarations under the Schedule of "controlling underlying insurance".

3.      "Event" means an "occurrence", offense, accident, act, or other event, to which the applicable "controlling underlying insurance" applies.

4.      "Injury or damage" means any injury or damage, covered in the applicable "controlling underlying insurance" arising from an "event".

5.      "Retained limit" means the available limits of "controlling underlying insurance" applicable to the claim.

6.      "Ultimate net loss" means the total sum, after reduction for recoveries, or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of:

   a.      Settlements, judgments, binding arbitration; or

   b.      Other binding alternate dispute resolution proceeding entered into with our consent.

   "Ultimate net loss" includes defense expenses if the "controlling underlying insurance" specifies that limits are reduced by defense expenses.

(*See* Ex. C.)

115.    The Commercial General Liability Policy is listed in the Declarations under the Schedule of Underlying Insurance.

116.    Coverage is not afforded under the Commercial Excess Liability Coverage Form because the Commercial General Liability Policy is not triggered by the original *Bauer* Counterclaim or the *Bauer* Amended Counterclaim and, as such, the applicable limits of the Commercial General Liability Policy have not been exhausted.

117.    To the extent that the original *Bauer* Counterclaim or the *Bauer* Amended Counterclaim alleges a "personal and advertising injury," which Acadia expressly denies that it does, during the policy period, coverage under the General Excess Liability Coverage Form is precluded because the "Material Published With Knowledge of Falsity" Exclusion that applies to

34

the Commercial General Liability Coverage Form also applies to the General Excess Liability Coverage Form.

118.    Additionally, to the extent that the <u>original</u> *Bauer* Counterclaim <u>or the *Bauer*</u> <u>Amended Counterclaim</u> alleges a "personal and advertising injury," which Acadia expressly denies that it does, during the policy period, coverage under the General Excess Liability Coverage Form is precluded because the "Quality or Performance of Goods – Failure to Conform to Statements" Exclusion that applies to the Commercial General Liability Coverage Form also applies to the General Excess Liability Coverage Form.

119.    Moreover, to the extent that the <u>original</u> *Bauer* Counterclaim <u>or the *Bauer*</u> <u>Amended Counterclaim</u> alleges a "personal and advertising injury," which Acadia expressly denies that it does, during the policy period, coverage under the General Excess Liability Coverage Form is precluded because the "Material Published Prior to Policy Period" Exclusion that applies to the Commercial General Liability Coverage Form also applies to the General Excess Liability Coverage Form.

120.    Acadia has and had no duty under the Policy to defend Tri-State against the <u>original</u> *Bauer* Counterclaim <u>or the *Bauer* Amended Counterclaim</u>, or to indemnify Tri-State for any judgment or settlement entered in the <u>original</u> *Bauer* Counterclaim <u>or the *Bauer*</u> Amended <u>Counterclaim</u>.

121.    An actual controversy exists between Acadia, Tri-State, Michael, and Stacey, and by the terms and provisions of 28 U.S.C. § 2201, this Court is vested with the authority to declare the rights and liabilities of the parties hereto and to grant such further and other relief as may be necessary.

WHEREFORE, Plaintiff, Acadia, respectfully prays that this Honorable Court:

35

131266946v3 3125

a.   Determine and adjudicate the rights and liabilities of the parties hereto with respect to the Policy;

b.   Find and declare that because the original *Bauer* Counterclaim and the *Bauer* Amended Counterclaim do not allege a "personal and advertising injury" sufficient to trigger coverage under the Commercial General Liability insuring agreement, no coverage is triggered under the Commercial Excess Liability Coverage Form;

c.   Find and declare that the "Material Published With Knowledge of Falsity" Exclusion bars all coverage under the Commercial Excess Liability Coverage Form for the claims asserted in the original *Bauer* Counterclaim and the *Bauer* Amended Counterclaim;

d.   Find and declare that the "Quality Or Performance of Goods – Failure to Conform To Statements" Exclusion bars all coverage under the Commercial Excess Liability Coverage Form for the claims asserted in the original *Bauer* Counterclaim and the *Bauer* Amended Counterclaim;

e.   Find and declare that the "Material Published Prior to Policy Period" Exclusion bars all coverage under the Commercial Excess Liability Coverage Form for the claims asserted in the original *Bauer* Counterclaim and the *Bauer* Amended Counterclaim;

f.   Find and declare that Acadia has and had no duty under the Policy to defend Tri-State against the original *Bauer* Counterclaim or the *Bauer* Amended Counterclaim, or to indemnify Tri-State for any judgment or settlement entered in the original *Bauer* Counterclaim or the *Bauer* Amended Counterclaim; and

g.   Grant Acadia such other and further relief that the Court deems proper under the facts and circumstances.

ACADIA INSURANCE COMPANY

/s/ Kent J. Cummings
One of its Attorneys

Dana A. Rice #6283827 (Application for Admission to be Filed)
drice@hinshawlaw.com
Kent J. Cummings #6215927
kcummings@hinshawlaw.com
Hinshaw & Culbertson LLP
222 North LaSalle Street

36

131266946v3 3125

Suite 300
Chicago, IL 60601-1081
Telephone: 312-704-3000
Facsimile: 312-704-3001

*ATTORNEY FOR PLAINTIFF – ACADIA INSURANCE COMPANY*

131266946v3 3125

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 28, 2016, I electronically filed the above **Acadia Insurance Company's Amended Complaint for Declaratory Judgment** with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to all counsel of record.

/s/ Kent J. Cummings

131266946v3 3125